F#: 2008R00488
JM:JEG:DAS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M-08-585**

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

  - against -

OSMOND DECOTEAU and
DONNA DANIELS,

           Defendants.

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANTS

(T. 18, U.S.C., § 1349)

- - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

      JOSEPH MORIARTY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

      On or about and between January 2006 and November 11, 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants OSMOND DECOTEAU and DONNA DANIELS, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and transmit and cause to be transmitted by means of wire in interstate commerce, for the purpose of executing such scheme or artifice, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349)

The source of my information and grounds for my beliefs are as follows:

1. I have been a Special Agent with the FBI for approximately six years and I am currently assigned to a financial institutions fraud squad, which investigates violations affecting financial institutions and other financial crimes. In this position, I have conducted physical surveillance, interviewed witnesses, reviewed extensive documents obtained through the service of subpoenas, and used other investigative techniques to secure relevant information for use in criminal prosecutions.

2. My knowledge of the information set forth in this affidavit is based upon my personal participation in this investigation and in numerous other investigations of fraud perpetrated against financial institutions and lenders, including wire fraud, my review of records and reports, my discussions with witnesses and victims, my conversations with other law enforcement agents involved in this investigation and similar investigations, my conversations with and review of information provided by financial institutions and my law enforcement experience and training, among other things.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the

issuance of arrest warrants, it does not include all of the facts I have learned during the course of this investigation. Where actions, conversations and statements of others are reported in this affidavit, they are reported in substance and in part unless otherwise indicated.

### Background - The Mortgage Loan Process

4.  Mortgage brokers assist borrowers seeking to obtain mortgages to purchase or refinance a property. As part of the mortgage process, mortgage brokers submit loan applications to mortgage lenders on behalf of prospective borrowers. First Franklin Financial ("First Franklin") and WMC Mortgage ("WMC") are mortgage lenders. After receiving a loan application, the mortgage lenders assess the likelihood that a borrower will repay the loan based on information in the loan application, and lend money in cases where they believe the borrower will repay.

5.  Lenders will often (but not always) employ an entity which services mortgage loans (the "Loan Servicer"). The Loan Servicer typically collects monthly mortgage loan payments from homeowners and remits those payments to the lender in exchange for a small monthly fee.

6.  When a property is sold or a mortgage is refinanced, the lender issuing the new loan usually wires the proceeds of the loan to an account controlled by an attorney

handling the closing of the loan (the "Closing Attorney").[1] The Closing Attorney will then use the proceeds of the new loan to pay off existing liens on the property. In order to ensure that the loan proceeds are properly allocated, the Loan Servicer will provide the seller's attorney with a payoff letter, setting forth the amount of the existing loan to be paid off. The payoff letter is then presented to the Closing Attorney who, in accordance with the information provided in the payoff letter, writes a check to the Loan Servicer. The Loan Servicer then remits the funds to the mortgage lender/lienholder. These funds satisfy the outstanding mortgage lien on the property. The mortgage lender/lienholder then prepares a document showing the lien has been satisfied and, upon receiving the payoff funds, files a satisfaction of lien with the county clerk's office.

### Overview of The Fraudulent Scheme

7.  The defendants OSMOND DECOTEAU and DONNA DANIELS are real estate investors. They control property held in the names of corporations and straw buyers. A straw buyer, in this case, is someone who participates in a real estate purchase transaction as a buyer, despite having no intention of living in the property, making mortgage payments on the loan used to

---

[1] In the case of a real estate purchase transaction, the Closing Attorney is the attorney representing the buyer's bank (the bank issuing the loan). In the case of a refinancing transaction, the Closing Attorney is the attorney representing the bank issuing the new, or refinancing, loan.

4

purchase the property, or otherwise assuming the responsibilities of ownership of that property.  Mortgage applications for straw buyers frequently contain misrepresentations, including misrepresentations concerning the buyer's income, assets, the origin of funds for down payments, and whether the buyer intends to occupy the property as his or her primary residence.

8.  DECOTEAU and DANIELS devised a scheme to misappropriate the payoff proceeds of mortgage loans associated with properties located in Brooklyn, NY.  DECOTEAU and DANIELS formed two corporations, New Tech Mortgage Servicing ("New Tech") and L & G Mortgage Servicing ("L & G"), and set up bank accounts for each.  Through the use of phony payoff letters, DECOTEAU and DANIELS fraudulently represented that New Tech and L & G were loan servicers for at least nine properties located in Brooklyn, NY (the "Nine Properties").  DECOTEAU and DANIELS caused these phony payoff letters to be presented at the closings for the Nine Properties.  With respect to each of the Nine Properties, when the Closing Attorney received the fraudulent payoff letter, the Closing Attorney wrote a payoff check to L & G or New Tech instead of the actual Loan Servicer for the existing lender.

9.  DANIELS is the president of L & G and the sole signatory on L & G's and New Tech's bank accounts.  DANIELS is also the registered agent for New Tech, a Florida Corporation.  DECOTEAU is the registered agent for L & G, a California

corporation. The payoff checks from the nine transactions at issue were deposited into L & G's and New Tech's bank accounts and then transferred by wire and check to other accounts controlled by DECOTEAU and DANIELS, including accounts in the names of Narcarta Holdings, Joyce, Don and Associates, and Donna Daniels, among other accounts. DANIELS is the sole signatory on the accounts named Joyce, Don & Associates and Donna Daniels. In cases where the funds were transferred to these accounts by check, all the checks which I have reviewed were signed by DANIELS.

10. As noted above, if the proceeds of the mortgage loans for each of the Nine Properties had been properly allocated, they would have been used to pay off the existing mortgage on each property. Instead, DECOTEAU and DANIELS stole the proceeds of the mortgage loans, and the first position mortgage on each of the Nine Properties remains outstanding. As a result, no satisfaction of the first position mortgage was ever recorded with the county clerk's office and two outstanding mortgages now exist on each of the Nine Properties.

### The First Franklin Loan

11. CW-1 owned a property in Brooklyn, New York ("Property 1"). CW-1 has stated that DECOTEAU advised CW-1 to refinance his mortgage on Property 1, and, at DECOTEAU's direction, CW-1 obtained a refinanced mortgage loan on Property 1

from First Franklin ("the First Franklin loan"). DECOTEAU told CW-1 that the proceeds of the First Franklin loan would not be used to pay off the existing first mortgage on Property 1, but would instead be diverted to a corporation controlled by DECOTEAU. As noted above, the mortgage servicer for CW-1's existing loan should have provided a payoff letter instructing the Closing Attorney to use the proceeds of the refinancing loan to pay the existing lien holder for Property 1. Instead, DECOTEAU caused a fraudulent payoff letter to be presented to the Closing Attorney instructing that the payoff proceeds of the refinancing loan be sent to New Tech.

12. In the fraudulent payoff letter, DECOTEAU falsely claimed that New Tech was the servicer for the first lienholder on Property 1. Thus, at the closing for the First Franklin loan, the Closing Attorney wrote a check to New Tech for the amount of the existing mortgage on Property 1. Because the true holder of the first mortgage was never paid, two outstanding mortgages now exist on Property 1.

13. The loan application for Property 1 contained false information. When I showed CW-1 copies of a mortgage application and other documents I obtained from First Franklin, CW-1 stated that the $20,000 listed for monthly income in the mortgage application was significantly inflated and that he did not have a bank account containing $62,000 as set forth in the

7

application. Moreover, although the application for the First Franklin loan included lease agreements demonstrating substantial rental income for CW-1, in reality, CW-1 did not provide DECOTEAU with the leases contained in First Franklin's file and did not recognize the names of the tenants on the lease agreements.

### The WMC Loan

14. CS-1 owned a property located in Brooklyn, NY ("Property 2"). CS-1 informed me that DECOTEAU held himself out to CS-1 as a successful real estate investor, and he advised CS-1 to refinance Property 2. At DECOTEAU's direction CS-1 obtained a mortgage refinancing loan on Property 2 from WMC ("the WMC loan") DECOTEAU handled everything regarding the WMC loan, including arranging for an attorney to represent CS-1.

15. DECOTEAU caused a fraudulent payoff letter to be presented to the Closing Attorney for Property 2 instructing that the payoff proceeds of the WMC loan be sent to New Tech. In the fraudulent payoff letter, DECOTEAU falsely claimed that New Tech was the servicer for the first lienholder on Property 2. Thus, at the closing for the refinancing loan for Property 2, the Closing Attorney wrote a check to New Tech for the amount of the existing mortgage. Because the true holder of the first mortgage was never paid, two outstanding mortgages now exist on Property 2.

16. In addition, the loan application submitted for the WMC loan contained false information. When I showed CS-1 copies of documents obtained from WMC, CS-1 stated that the $20,000 listed for CS-1's monthly income is approximately what CS-1 earns in one year and that CS-1 does not work for the company listed on the application. Moreover, CS-1 did not provide DECOTEAU with the leases contained in the WMC loan file, which purport to show rental income for another property owned by CS-1. In fact, CS-1 derives no rental income from this other property.

17. Based upon documents provided by an attorney involved in the transactions below, documents provided by lenders in response to subpoenas, and ACRIS, New York City's property records database, the following real estate sales transactions included the presentation of fraudulent New Tech and L & G payoff letters:

| Closing Date | Address[2] | Payoff Amount | Servicer |
| --- | --- | --- | --- |
| 8/31/2006 | 359 Jefferson Ave. | $544,979 | L & G[3] |
| 6/29/2006 | 844 E. 34th St. | $576,862 | New Tech[4] |

---

[2]  All of the properties listed below are located in Brooklyn, NY.

[3]  DANIELS was the seller in this transaction.

[4]  DECOTEAU represented the seller at the closing in this transaction using a power-of-attorney.

| | | | |
|---|---|---|---|
| 2/17/2006 | 318 East 16th St. | $645,057 | L & G[5] |
| 2/16/2006 | 274 Malcolm X Blvd. | $489,021 | New Tech[6] |
| 4/11/2006 | 229 Albany Ave. | $499,995 | New Tech |
| 11/3/2006 | 1102 Putnam Ave. | $554,092 | L & G |
| 3/30/2006 | 412 Macon St. | $556,045 | New Tech[7] |
| 4/24/2006 | 147 Monroe St. | $592,183 | New Tech |
| 7/7/2006 | 1672 E. 48th St. | $470,550 | New Tech[8] |
| Total: | | $4,928,784 | |

18. According to ACRIS, each of the properties set forth above has two outstanding mortgage liens against it.

19. I have reviewed checks drawn on the accounts for Joyce, Don & Associates and Donna Daniels. All of these checks are signed by DANIELS. In addition, some of these checks appear to be for mortgage payments on the properties referenced in paragraph 17, above. These payments were made despite that fact that DANIELS was not the owner of the property, and were made after the closing dates referenced above. Upon information and

---

[5] DECOTEAU represented the seller at the closing in this transaction using a power-of-attorney.

[6] This was a refinancing transaction.

[7] DECOTEAU represented the seller at the closing in this transaction using a power-of-attorney. DANIELS was the seller.

[8] This was a refinancing transaction. The refinancing homeowner purchased the property from an individual who was represented at the closing by DECOTEAU using a power of attorney.

belief, DECOTEAU and DANIELS reside at the same address.

WHEREFORE, I respectfully request that arrest warrants be issued so that the defendants OSMOND DECOTEAU and DONNA DANIELS be dealt with according to law.

                                                    _____
                                                    Joseph Moriarty
                                                    Special Agent
                                                    Federal Bureau of Investigation

Sworn to before me this
25 day of June, 2008

_____
CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

11